UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON
SUBSCRIBING TO POLICY
NO. B0901LH1620115000,

    Plaintiff,

vs.

EMPRESS MARINE VENTURES LTD.

    Defendant.
_____/

Case No. **20-cv-62643-AHS**

## UNDERWRITERS' AMENDED MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

Plaintiff Certain Underwriters at Lloyd's of London seeks final summary judgment on its direct-action claims of Breach of Express Warranty and Declaratory Judgment, and Empress Marine's sole remaining counterclaim of Breach of the Covenant of Good Faith and Fair Dealing. For the reasons detailed below, the Court should grant this Motion and enter final judgment in favor of Underwriters.

**I.  INTRODUCTION**

This case is about greed and the interpretation of a marine insurance contract. In 2015, Empress Marine Ventures Ltd. purchased 2011 130-foot Sunseeker Predator Motor Yacht known as M/Y "Never Say Never" (the "Vessel") for $8 million. *See* SOF at ¶ 1.[1] Empress Marine sold the Vessel for $5.7 million in February of 2021. *See* SOF at ¶ 2. Before the Vessel's sale,

---

[1] References to the contemporaneously filed Statement of Material Facts appear as "SOF" followed by the corresponding paragraph number.

Underwriters paid Empress Marine $3,459,634.00 for claim-related repair costs resulting from the underlying allision. *See* SOF at ¶ 18. Empress Marine, however, seeks to obtain an unsupported windfall in its favor. This Court should not permit such a recovery to be had by Empress Marine.

Moreover, as to the interpretation of the insurance contract, Empress Marine attempts to construe the "New for Old" clause[2] under the Policy to bar Underwriters from assessing the reasonableness of apparent hyper-inflated repair costs. Simply put, such a construction of the Policy as a whole would lead to an absurd result and open the floodgates to insureds submitting hyper-inflated repair costs all while knowing that their insurer could not evaluate and assess the reasonableness of those repair costs. The Court should not accept Empress Marine's construction of the subject Policy, which is otherwise clear and unambiguous.

Accordingly, and as further detailed below, the Court should find that no dispute as to any material fact exists to preclude the entry of summary judgment in favor of Underwriters.

## II.  LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment shall be granted if the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Hill v. Certain Underwriters at Lloyds of London*, No. 20-62212-CIV, 2022 U.S. Dist. LEXIS 19817, at *3–5 (S.D. Fla. Jan. 31,

---

[2] The "New for Old" clause provides: "In the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, the Assurers shall be liable for no more than the cost of repair *or* a reasonable value." SOF at ¶ 9. (Emphasis added).

2022) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Id*. (*citing Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014)). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Id*. (*citing Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants, LLC*, 631 Fed. Appx. 817, 820 (11th Cir. 2015). And "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

The basis of the Parties' dispute in this case is the interpretation of an insurance contract. Under New York law,[3] interpretation of an insurance contract is a matter of law to be determined by the Court, and may be determined on summary judgment. *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 324 (S.D.N.Y. 2019) ("Under both New York and Florida law, unambiguous terms in insurance contracts are to be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."). Furthermore, "it is well established under New York law that a policyholder bears the burden of showing that the insurance

---

[3] This Court has already determined that New York law applies in this matter. *See* Court Order [D.E. 46 at p. 7].

3

contract covers the loss." *Id*. at 323 (*quoting Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000)).  This burden does not shift to the insurer where, as here, the insurer moves first for declaratory judgment. *Id*. (*citing Preferred Acci. Ins. Co. v. Grasso*, 186 F.2d 987, 991 (2d Cir. 1951) and *Chevron Corp. v. Salazar*, 2011 U.S. Dist. LEXIS 92091, 2011 WL 3628843, at *7 (S.D.N.Y. Aug. 17, 2011)).

**III.   ARGUMENT**

Underwriters move for summary judgment on all claims pending in this case.  **First**, Empress Marine breached the Policy's express warranties thereby forfeiting coverage as a matter of law.  **Second**, Empress Marine's unclean hands bars recovery of insurance benefits under the Policy as a matter of law.  **Third**, even if Empress Marine did not forfeit coverage entirely, the Policy unambiguously requires Underwriters to only pay for repairs that are fair, reasonable, and related to the underlying claim.  **Lastly**, the actual amount paid by Empress Marine, payments received by Empress Marine from Underwriters, and Empress Marine's sale of the subject Vessel for $5.7 million mandate an analysis of the alleged damages claimed in this case concluding that Empress Marine is not allowed a recovery, if any, of an amount greater than the insured value of the Vessel.

    **A. Empress Marine Breached the Express Warranties under the Policy by Navigating the Vessel Outside of the Geographical Limits and Failing to Follow all Laws and Regulations while Navigating Outside the Geographic Limits**

Underwriters submit that no dispute as to any material fact exists relating to Empress Marine's failure to adhere to the agreed-upon express warranties under the Policy.

    *1.  New York Law Requires Strict Compliance With Express Warranties*

Under New York law, with respect to marine insurance contracts, the materiality of the breach is irrelevant. *See* N.Y. Ins. Law § 3106(c) (2022) ("This section shall not affect the express or implied warranties under a contract of marine insurance in respect to, appertaining to or in

4

connection with any and all risks or perils of navigation, transit, or transportation . . . on, over or under any seas or inland waters, nor shall it affect any provision in an insurance contract requiring notice, proof or other conduct of the insured after the occurrence of loss, damage or injury"); *Advani Enters. v. Underwriters at Lloyds*, 962 F. Supp. 415, 419–20 (S.D.N.Y. 1997) *vacated on other grounds* 140 F.3d 157 (2d Cir. 1998) (§ 3106, like federal admiralty law and majority view, requires strict compliance with warranties in marine insurance contracts); *N.H. Ins. Co. v. Dagnone*, 394 F. Supp. 2d 480 (D.R.I. 2005) (insured's breach of warranty under marine insurance policy precluded recovery per § 3106(c)). New York law has instead long-recognized that an express warranty in a marine insurance policy must be literally complied with, and noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss. *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 31–32 (2d Cir. 1999) (analyzing Florida and New York law with respect to breach of marine insurance contract warranties; finding New York law, like majority view, requires strict compliance with warranties in maritime insurance contracts, even if they are collateral to the primary risk that is the subject of the contract).

The imposition of the "literal performance rule" stems from the peculiarly difficult task for marine insurers in assessing their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage. *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2006) (rejecting insured's argument that breach of warranty was not material to loss as warranties "must be literally complied with" or else forfeit coverage); *Flagship Marine Servs.*, 190 F.3d at 31 ("warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover."); *see also Port Lynch, Inc. v. New England Int'l Assurety,*

*Inc.*, 754 F. Supp. 816, 824 (W.D. Wash. 1991) (finding well-established federal maritime law required strict compliance with navigational warranties).

Therefore, under New York law, where a warranty in a marine insurance policy pertains to any risk of marine navigation, transit or transportation on seas or inland waters, the breach of such warranty absolutely voids coverage during the period of non-compliance and precludes recovery under such policy. *Cogswell v. Chubb*, 1 A.D. 93, 95, 36 N.Y.S. 1076, 1078 (1st App. Div. 1896) ("[T]he breach of an express warranty [in a marine insurance contract], whether material to the risk or not, whether a loss happens through the breach or not, **absolutely** determines the policy, and the assured forfeits his rights under it.") (emphasis added).

### 2. *Empress Marine Forfeited Its Rights Under The Policy by Breaching the Navigational Limit Warranty*

Here, the underlying incident occurred in the territorial waters of the Dominican Republic and outside of the warranted geographical navigating limits. *See* Counterclaim [D.E. 14 at p. 10 (¶ 8)]; SOF at ¶¶ 6, 11. The "Navigating" clause under the Policy clearly and unambiguously provides that the Vessel would only be navigated over the "[i]nland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including the Bahamas and the Turks and Caicos Islands." SOF at ¶ 6. Empress Marine navigated the Vessel to the Dominican Republic without first obtaining express consent via a signed Endorsement from Underwriters to do so. The Policy clearly and unambiguously provides that "insurance is conditioned upon compliance by [Empress Marine] with all the terms, conditions and warranties" and that "[n]othing contained herein shall be construed to increase the limits of the [Underwriters'] liability as stated in this Policy." *See* SOF at ¶ 9 ("Omnibus Clause").

Empress Marine failed to comply with the "Navigating" limit warranty by exceeding the geographic limits warranted at which point the Vessel sustained damages. Such non-compliance

forbids recovery under New York law. *Dagnone*, 394 F. Supp. 2d at 486 (applying New York law to find that breach of navigation warranty forecloses any coverage under the Yacht Policy if insured was in breach of the warranty ***at the time of the accident***, irrespective of the relation between the breach and the damage); *Stony Brook Marine Transp. Corp. v. Wilton*, 1997 U.S. Dist. LEXIS 23146, at *35 (E.D.N.Y. Apr. 21, 1997) (warranty "must be literally complied with, and that non-compliance forbids recovery, regardless of whether the omission had casual relation to the loss"). And Empress Marine cannot argue Underwriters' waived this argument because "compliance with a marine policy warranty is a condition precedent to the Underwriters' liability thereunder and affords a complete defense to coverage if not complied with, regardless of whether causation between the breach and injury exists." *Wilton*, 1997 U.S. Dist. LEXIS 23146, at *35 (*quoting Sirius Ins. Co. (UK) v. Collins*, 1993 U.S. Dist. LEXIS 21208, at *4 (E.D.N.Y. June 28, 1993)).

Therefore, because Empress Marine failed to first obtain a written agreement or endorsement permitting the Vessel to be navigated outside of the navigational limit warranty before the occurrence of the underlying incident, Empress Marine breached the express navigational limit warranty thereby barring coverage of the claim as a matter of law.

### 3. *Empress Marine Forfeited Its Rights Under The Policy by Breaching the Express Warranty to Observe All Laws/Regulations while Operating the Vessel*

The International Regulations for Preventing Collisions at Sea, 1972 ("COLREGS"), act as the "rules of the road" for high seas navigation. *Arabian Am. Oil Co. v. Hellenic Lines, Ltd.*, 633 F. Supp. 659, 665–66 (S.D.N.Y. 1986); 33 U.S.C.S. § 1602 (2022). The rules under the COLREGS are strictly and literally construed, and have the force of a statute. *Arabian Am. Oil Co.*, 633 F. Supp. at 665–66. Rule 9(a) of the COLREGS mandates that a "vessel proceeding along the course of a narrow channel or fairway shall keep as near to the outer limit of the channel

7

or fairway which lies on her starboard side as is safe and practicable." 33 U.S.C.S., Ch. 30, Pt. B, Conduct of Vessels in Any Condition of Visibility, Rule 9. Rule 9(f) mandates that a "vessel nearing a bend or an area of a narrow channel or fairway where other vessels may be obscured by an intervening obstruction shall navigate with particular alertness and caution and shall sound the appropriate signal prescribed in Rule 34(e)." *Id*. Rule 5 mandates that "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." 33 U.S.C.S., Ch. 30, Pt. B, Conduct of Vessels in Any Condition of Visibility, Rule 5.

Here, the Policy clearly and unambiguously warrants that "all laws/regulations applicable to the operation of the vessel are observed and complied with." *See* SOF at ¶ 8. Yet, at the time of the Incident, Empress Marine operated the Vessel outside a marked channel in the Dominican Republic. *See* SOF at ¶ 11. Empress Marine's failure to operate the Vessel in accordance with COLREGS caused the Vessel to run aground and sustain damages. Consequently, Empress Marine indisputably breached the Policy's express warranty to observe and comply with all laws and regulations while operating the Vessel. Therefore, the Court should find that Empress Marine is not afforded coverage under the Policy as a matter of law.

### B. Empress Marine's Unclean Hands Bars Recovery under the Policy

Empress Marine contends that Underwriters' unreasonable delays and failure to declare the Vessel a total loss from the outset violated the implied covenant of good faith and fair dealing. *See* Counterclaim [D.E. 14 at pp. 12 (¶ 26), 15 (¶ 39)]. Empress Marine is wrong, however, for three reasons. **First**, there is no evidence that any alleged delays related to the reimbursement of amounts paid by Empress Marine affected the timeliness of the repairs to the vessel. In fact, the at-issue Policy is an indemnity policy that requires Empress Marine to pay for the reasonable costs

of repairs and thereafter seek reimbursement from Underwriters for amounts deemed fair, reasonable, and related to the underlying loss. **Second**, invoices and documentation submitted by Empress Marine during the claim investigation included millions of dollars in expenses not at all fair and reasonable, related to the subject Vessel, or related to the underlying claim. *See* SOF at ¶ 19. **Third**, the Vessel was not a total loss as evidenced by the fact that the amount spent to repair the Vessel did not exceed the insured value of the Vessel and Empress Marine's ultimate sale of the Vessel for $5.7 million in February 2021. *See* SOF at ¶ 2, 18–19.

It is axiomatic that "[p]arties to a marine insurance contract are held to the highest degree of good faith." *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 123 (2d Cir. 2001); *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 870 (2d Cir. 1985). Under New York law, application of the "unclean hands" doctrine is appropriate where the inequitable conduct is directly related to the subject matter in litigation such that the party's claim is founded in illegality or immorality. *Goldstein v. Delgratia Mining Corp.*, 176 F.R.D. 454, 458 (S.D.N.Y. 1997) (unclean hands defense applies where party made misrepresentations regarding law and facts); *Jones Apparel Grp. v. Piccone*, 1994 U.S. Dist. LEXIS 7607, at *12 (S.D.N.Y. June 8, 1994) ("an unclean hands defense requires a finding of bad faith"); *see also ABF Freight Sys. v. NLRB*, 510 U.S. 317, 329, 114 S. Ct. 835, 842 (1994).

Here, Empress Marine immorally and impermissibly attempts to include and recover costs that are not related to the repair costs for the underlying allision claim which resulted in damages to the Vessel. More specifically, Empress Marine's Corporate Representative testified in deposition that $1,413,002.00 of the alleged $9.9 million in repair costs were not at all related to

9

the underlying claim and subject Vessel.[4] *See* SOF at ¶ 19. That is, the $1,413.002.00 included repairs to another vessel known as "DOT.Com", as well as legal fees paid to Empress Marine's Counsel and Insurance broker fees. *See* SOF at ¶ 19. As such, assuming arguendo that Empress Marine' alleged repair costs are covered and recoverable, the actual amount Empress Marine allegedly spent on the repairs would be approximately $8.5 million. Such inclusion of unrelated costs inflated the total alleged damages claimed in this case, causing Underwriters to file this lawsuit to determine its liability to Empress Marine and Empress Marine's rights under the Policy. Here, the insured value of the Vessel/Policy limit was $9.5 million. Thus, based upon the assumption that Empress Marine spent approximately $8.5 million on covered and recoverable repair costs, when compared to the insured value/Policy limit of $9.5 million, it is clear that the Vessel was not a total loss and that Underwriters did not have a reason to declare the Vessel a total loss.

Moreover, contrary to Empress Marine's assertions, the Vessel was not a total loss as Empress Marine sold the Vessel at a significant price. *See* SOF at ¶ 2. Because Empress Marine included repair costs not related to the claim to the tune of $1,413.002.00, received payments from Underwriters totaling $3,459,634.00 and sold the Vessel for $5.7 million, there can be no dispute that Empress Marine is not entitled to collect on the entire $9.5 million coverage limit under the Policy as that would represent a windfall to Empress Marine even if it could show the repair costs it allegedly incurred to be fair and reasonable.

---

[4] It must be noted here that Underwriters challenge the fair and reasonableness of the $9.9 million figure as a separate matter in this case via expert witness testimony and only include this figure in the arguments in this Motion for Summary Judgment put forth before the Court to show that, even assuming Empress Marine's alleged numbers are accurate, there is no basis to support the claim that the Vessel was total loss. Underwriters in no way accepts Empress Marine's alleged repair costs as fair and reasonable.

10

Furthermore, Empress Marine's inclusion of repair costs for an entirely different vessel and unrelated claim voids coverage under the Policy. The Policy unambiguously provides that the "entire Policy shall be void if the Assured or their representative has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Assured therein, or in case of fraud or false swearing by the Assured touching any matter relating to this insurance or the subject thereof whether before or after a loss." *See* SOF at ¶ 9 ("Misrepresentation or Fraud"). Because Empress Marine misrepresented its alleged repair costs associated with the underlying claim by over $1.4 million, the Court should find that Empress Marine is barred from recovering under the Policy.

Therefore, the Court should find that Empress Marine entered this litigation with unclean hands and is barred from recovering under the Policy.

### C. Underwriters are Only Required to Pay for Repairs that are Fair, Reasonable, and Related to the Claim

Under the Policy, Underwriters are required only to reimburse Empress Marine for the reasonable cost of repair, no more. This duty is derived from several sources: the Policy and contract law.

The first source is the Policy, which references "reasonable" costs and expenses at least six times. Chief among them, and most relevant to this action, is the "New for Old" clause, which states that "In the event of loss or damage, cost of repairs to be paid without deduction, new for old, except with respect to sails and covers of canvas or other like materials, the Assurers shall be liable for no more than the cost of repair or a reasonable value." *See* SOF at ¶ 9. Thus, by the plain and unambiguous language of the Policy, "the Assurers shall be liable for no more than the cost of repair or a reasonable value." *Id*.

Such an unambiguous clause, seemingly self-evident, is consistent with New York law, the second source of the rule. *See, e.g., Lenfest v. Coldwell*, 525 F.2d 717, 725 (2d Cir. 1975) ("Here the claimed expenses were in large part actually incurred by the owners and the determination of which of these expenses, if reasonable, should be allowed is a question of law. To determine the legal questions, however, we need more detailed findings on what these costs were for, and particularly, how they relate to the repair of the vessel."); *Jeffcott v. Aetna Ins. Co.*, 129 F.2d 582, 587-88 (2d Cir. 1942) (analyzing the reasonable cost of repairs to be ordered by the court following hurricane damage to a yacht). Indeed, in the context of automobiles, the New York legislature actually codified this rule. *See* N.Y. Comp. Codes R. & Regs. tit. 11, § 216.7(a)(1) ("Agreed price shall mean the amount agreed to by the insurer and the insured, or their representatives, as the reasonable cost to repair damages to the motor vehicle resulting from the loss, without considering any deductible or other deductions.") (emphasis added); *see also Rizzo v. Merchs. & Businessmen's Mut. Ins. Co.*, 727 N.Y.S.2d 250, 252 (N.Y. App. Term 2001) ("This does not mean that an insured is automatically entitled to be reimbursed for the full amount charged by the repair shop authorized by the insured to make the repairs. Where, as here, the parties cannot reach an agreed price, the insured bears the burden of establishing the reasonable cost of the repairs necessary to bring the vehicle to its condition prior to the loss.").

The third source is the general common law duty under New York law for parties to a contract to mitigate damages. *See U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440-41 (S.D.N.Y. 2010); *see also* RESTATEMENT (SECOND) OF CONTRACTS § 350(1) (1981) ("Except as stated in Subsection (2), damages are not recoverable for loss that the injured party could have avoided without undue risk, burden or humiliation."). An insured who incurs excessive bills following a loss has failed to mitigate its damages and cannot recover that which

could have reasonably been avoided. *See Wechsler v. Hunt Health Sys, Ltd.*, 330 F. Supp. 2d 383, 427 (S.D.N.Y. 2004).

The fourth source, related to the third and usually framed in the context of a so-called "sue and labor clause," is the general duty of an insured following a loss "to exercise the care of a prudent uninsured owner to protect insured property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy." *Am. Home Assurance Co. v. Merck & Co., Inc.*, 386 F. Supp. 2d 501, 517 (S.D.N.Y. 2005) (*quoting Reliance Ins. Co. v. Escapade*, 280 F.2d 482, 488 (5th Cir. 1960)). This is, in effect, a restatement of the general duty to mitigate damages: following a loss, an insured has a duty to act as if he himself would be responsible for the ensuing payments, rather than the insurance company. Failure to act with such regard for the insurer's interest forfeits the insured's ability to recover that which he spent unnecessarily. *Cf. Wechsler*, 330 F. Supp. 2d at 427 ("Under New York law, an injured party cannot recover damages for a loss that it could have avoided by reasonable efforts.").

Fifth, all of these rules are consistent with the general rule of federal admiralty law that "The measure of indemnity for a particular average ship is the reasonable cost of repairs," and that "to determine the reasonable cost of repairs, each particular case must be evaluated in all of its circumstances." *See generally* LESLIE J. BUGLASS, MARINE INSURANCE AND GENERAL AVERAGE IN THE UNITED STATES 155-61 (3d ed. 1991). Thus, while "reasonable cost of repairs" has been interpreted differently by courts in the United States, "a shipowner is entitled to repair [its] vessel in that manner which a prudent [person] would employ if uninsured." *Id.* at 158.

Lastly, but certainly not least, under New York law, a covenant of good faith and fair dealing is implied in every contract, including insurance contracts. *See, e.g., N.Y. Univ. v. Cont'l Ins. Co.*, 662 N.E.2d 763, 769 (N.Y. 1995). This covenant, which goes both ways, is breached

13

"when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Aventine Inv. Mgmt., Inc. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d 128, 130 (N.Y. App. Div. 1999). And under New York law, where a contract grants discretion to a party, the covenant includes an implied promise "not to act arbitrarily or irrationally in exercising that discretion." *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995). To the extent that the Policy and applicable law give Empress Marine the discretion to begin making repairs to the Vessel, such discretion is still subject to limits. Empress Marine cannot act "arbitrarily or irrationally" in effecting repairs lending itself to but one conclusion: it must act reasonably. *See id*.

To that end, the Policy provides clear instructions to an insured whose vessel is damaged: "The Assured shall co-operate with the Assurers and shall not assume any obligation, admit any liability or incur any expense for which the Assurers may be liable, without the written approval of the Assurers," excepting so-called "sue and labor" costs that are not relevant to this action. *See* SOF at ¶ 9 ("Legal Representation and Co-Operation Clause"). The Policy alone, therefore, states that the insured cannot spend indefinite sums of money expecting the insurer would pay those sums without evaluating the reasonableness of the amounts spent and consent to pay those amounts. Again, it must act reasonably.

In short, a multitude of sources from various points of view all point to the same result—Underwriters are only required to indemnify their insured—if at all—for the reasonable cost of repairs, even if that amount is ultimately lower than what Empress Marine profligately spent.

### D. Empress Marine Would Never be Entitled to the Insured Value of the Vessel in any Recovery Scenario

Empress Marine contends that it is entitled to the full insured value of $9.5 million for the Vessel under the Policy. *See* Answer [D.E. 14 at p. 6 (¶ 78)]. But it would be unjust and inequitable to permit Empress Marine to recover more than an amount to which it is legally entitled. That said, however, as shown above, it is undisputed that Empress Marine has not incurred expenses in excess of the $9.5 million policy limit and that the amount actually spent (making the significant assumption that they are recoverable as fair and reasonable for purposes of this argument only) is approximately $8.5 million once the unrelated amounts are removed from its claim. *See* SOF at ¶ 19. Moreover, Empress Marine has been paid $3,459,634.00 by Underwriters for the alleged repairs costs. *See* SOF at ¶ 18. Further, Empress Marine sold the Vessel for $5.7 million in February of 2021. *See* SOF at ¶ 2. As such, if Empress Marine were to recover the full insured value of $9.5 million, such a recovery would run counter to the manifest weight of the evidence which shows Empress Marine did not spend $9.5 million to repair the Vessel. *See* SOF at ¶¶ 18–19. Additionally, any such recovery would fail to recognize the $3,459,634.00 Empress Marine has received from Underwriters and it would fail to consider the $5.7 million that Empress Marine received when it sold the Vessel. In short, Empress Marine should not receive an amount greater than the insured value of the Vessel under any factual scenario.

**WHEREFORE**, based on the foregoing, Underwriters respectfully request that the Court grant this Motion for Summary Judgment, dismiss the Counterclaim by Empress Marine, enter final judgment in favor of Underwriters, and grant any further relief the Court deems just and proper.

Dated: August 23, 2022.

Respectfully submitted,

**BROWN SIMS**
*Attorneys for Underwriters*
4000 Ponce De Leon Blvd, Suite 630
Coral Gables, Florida 33146
(305) 274-5507 – Office
(305) 274-5517 – Fax
mgreen@brownsims.com
cfrank@brownsims.com

By: */s/ Marlin K. Green*
   **MARLIN K. GREEN, ESQ.**
   Florida Bar No. 419532
   **CODY L. FRANK, ESQ.**
   Florida Bar No. 124100

Case 0:20-cv-62643-AHS   Document 75   Entered on FLSD Docket 08/23/2022   Page 16 of 17

**SERVICE LIST**

**MOORE & COMPANY, P.A.**
*Attorneys for Empress Marine*
255 Aragon Avenue, 3rd Floor
Coral Gables, FL 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Michael T. Moore, Esq.
Florida Bar No. 207845
Email: michael@moore-and-co.com
Clay Naughton, Esq.
Florida Bar No. 029302
Email: cnaughton@moore-and-co.com