**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**In Admiralty**

CERTAIN UNDERWRITES AT
LLOYD'S OF LONDON,
subscribing to Policy No.
B0901LH1620115000,

Case No. 0:20-cv-62643

    Plaintiff,

v.

EMPRESS MARINE VENTURES,
LTD.

    Defendant.
_____/

### DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND PRE/POST JUDGMENT INTEREST

Empress Marine Ventures, LTD. ("Defendant"), by and through undersigned counsel, and pursuant to this Court's Order ([DE 124], p. 13, ¶ 5) and Local Rule 7.3, hereby submits this motion for attorney's fees, pre-judgment interest, and post-judgment interest against Certain Underwriters at Lloyd's, London ("Plaintiff"). In support, Defendant states the following:

### INTRODUCTION

In its Court Oder ([DE 124]), this Court held that Plaintiff is liable for the total cost of repairing Defendant's vessel. [DE 124], p. 12 ("Empress Marine's damages consist entirely of ***actual amounts it has already paid out of its own pocket to repair the Vessel***") (emphasis original). Defendant spent $9,764,746.01 repairing the Vessel. [DE 123], p. 16. Plaintiff made partial payments under the relevant insurance policy, starting in June 2017 and ending in June

2019, and totaling $3,259,432.20. [DE 123], p. 6-7. Therefore, Defendant is owed an additional $6,505,313.81 from Plaintiff to recover the total costs of repairing the vessel.

In addition, Defendant is entitled to attorney's fees - pursuant to *Fla. Stat.* § 627.428 – and pre-judgment as well as post-judgment interest as part of the relief this Court has authority to grant. Defendant seeks $799,917.00 in attorney's fees. Defendant seeks $610,198.42 in pre-judgment interest. Both figures are explained in detail below.

## **LEGAL STANDARDS**

**I.     Fla. Stat. § 627.428**.

*Fla. Stat.* § 627.428 states, in relevant part:

(1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum of fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

*Id.* This statute applies here, notwithstanding the court's admiralty jurisdiction. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1315 (11th Cir. 2000) ("we hold that a district court may award attorney's fees pursuant to Fla. Stat. § 627.428 against an insurer in a maritime insurance contract case"). Indeed, the Eleventh Circuit has held that numerous district courts within this circuit have awarded attorney's fees pursuant to *Fla. Stat.* § 627.428 in disputes concerning marine insurance contracts. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1313 (11th Cir. 2000) ("[t]his circuit has awarded attorney's fees pursuant to *Fla. Stat.* § 627.428 in a number of marine insurance contract dispute").

Moreover, *Fla. Stat.* § 627.428 applies even if the contract at issue is governed under New York law. *Mears Transp. Grp., Inc. v. Zurich Am. Ins. Co.*, 660 F. Supp. 2d 1297, 1302 (M.D.

Fla. 2009) ("[t]he parties agree that this matter is governed by New York law"); *Id.* at 1306 ("[d]efendant is also liable to Plaintiff for reasonable attorney's fees under Fla. Stat. § 627.428).

**II.      Determining Reasonable Attorney Fee Award**.

In the Eleventh Circuit, district courts tasked with determining the amount of attorney's fees to award a prevailing party must follow the "loadstar" approach. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) ("[t]he starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. [citation omitted]. This "lodestar" may then be adjusted for the results obtained"). Furthermore, the Supreme Court of the United States has held that the "loadstar" figure itself represents a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992).

More recently, a district court within the Southern District of Florida explained: "In calculating a reasonable attorney's award, the Court must consider the number of hours reasonably expended, together with the customary fee charged in this community for similar legal services. *Blue Water Marine Servs. v. M/Y Natalita, III*, No. 08-20739-CIV, 2010 U.S. Dist. LEXIS 30242, at *8 (S.D. Fla. Feb. 2, 2010). The same district court further explained that "[t]he Supreme Court has held that a reasonable hourly rate is to be measured by the "prevailing market rates in the relevant community"". *Blue Water Marine Servs.*, No. 08-20739-CIV, 2010 U.S. Dist. LEXIS 30242, at *10 (S.D. Fla. Feb. 2, 2010). In defining prevailing market rates, district courts look "at several factors such as: "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases". *Blue Water Marine Servs.*, No. 08-20739-CIV, 2010 U.S. Dist. LEXIS 30242, at *10 (S.D. Fla. Feb. 2, 2010). "The appropriate hourly rate may be

3

determined by either analyzing any affidavits submitted into evidence by counsel, or if the affidavit is insufficient, by relying upon the court's expertise." *Id.*

"[P]aralegal fees are recoverable as attorney's fees at prevailing market rates". *Valley Nat'l Bank v. Layla*, No. 8:18-cv-2214-T-60JSS, 2020 U.S. Dist. LEXIS 97143, at *7 (M.D. Fla. May, 1, 2020).

Lastly, it is important to note that the "court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper attorney's fees, and may form an independent judgment either with or without the aid of witnesses as to value". *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).

## ARGUMENT

**I.    Hourly rates charged by defense counsel are reasonable.**

Counsel for Defendant charged the following hourly rates, as described in the table below:

| Year | Hourly Rates |
|------|--------------|
| 2017 | Senior Partner: $600/hr<br>Associate: $200-225/hr |
| 2018 | Senior Partner: $600/hr<br>Associate: $225-350/hr<br>Paralegal: $160 |
| 2019 | Senior Partner: $600/hr<br>Paralegal: $115/hr<br>Associate: $350/hr |
| 2020 | Senior Partner: $600/hr<br>Associate: $350/hr<br>Paralegal: $115/hr<br>Senior paralegal: $160/hr |
| 2021 | Senior Partner: $600/hr<br>Partner: $450/hr<br>Associate: $225 - $350/hr<br>Paralegal: $115-160/hr |
| 2022 | Senior Partner: $625/hr<br>Partner: $475/hr<br>Associate: $350/hr<br>Paralegal: $150/hr<br>Senior Paralegal: $175/hr |

As a starting point, every invoice submitted to Defendant for legal services by Defense counsel is attached herein as **Exhibit 1**. These invoices detail the following: i) the hourly rate charged by every timekeeper, ii) the hourly rate billed, and iii) a description of the work. *See generally* **Exhibit 1**. In addition, a detailed table evincing every timekeeper, their billable rate, and their total hours billed is attached herein as **Exhibit 2**.

Next, district courts in the Southern District of Florida have previously held that rates substantially similar to those shown in the table above are considered reasonable for the local market. *PDVSA US Litig, Tr. v. Lukoil Pan Ams, LLC*, No. 1:18-cv-20818, 2020 U.S. Dist. LEXIS 21698, at *30 (S.D. Fla., Jan. 31, 2020) ("the undersigned finds that the following hourly rates are reasonable in the local market for the following timekeepers: $625 for partners, shareholders, and counsel; $350 for associates; and $125 for paralegals"); *Davis v. Nationwide Ins. Co. of Am.*, No. 19-cv-80606-SMITH/MATTHEWMAN, 2022 U.S. Dist. LEXIS 15963, at * 9 (S.D. Fla., Jan. 28, 2022) ("the Undersigned finds that the paralegal hourly rate of $125 is reasonable and that Mr. Stewart's hourly rate should be reduced to $600 per hour"); *BASF Corp. v. Collision One, Inc.*, No. 09-60328-CIV, 2010 U.S. Dist. LEXIS 54146, at *4-5 (S.D. Fla. May 4, 2010) (noting that another court within the Southern District of Florida held that "fourth-year associate hourly rates at $325-350" were deemed reasonable).

Specifically, the senior partner's rate of $625 an hour seems fair and reasonable in light of a nearly thirteen-year-old court opinion holding that the same partner's $425 an hour rate in 2010 was justifiable. *Blue Water Marine Servs. v. M/Y Natalita, III,* No. 08-20739-CIV, 2010 U.S. Dist. Ct. LEXIS 30242, at *15 (S.D. Fla. Feb. 2, 2010) (holding that a decade ago "Mr. Moore's hourly

rate of $425 [was] reasonable due to his years of experience and specialization in the field of maritime law litigation").

Therefore, the rates themselves are reasonable given that they are in line with prevailing market rates in the southern Florida market – as evidenced by prior district court opinions concerning attorney rates in this market.

II.     **Total time spent on case by defense counsel is reasonable.**

The total time spent by each timekeeper on this matter can be discerned from **Exhibit 2**. A summary of **Exhibit 2** can be seen in the table below.

| Timekeeper | Rate | Number of Hours | Total Billed |
|---|---|---|---|
| Michael T. Moore (Senior Partner) | $600-$625 | 387.45 | $235,232.5 |
| Rey Saenz (Paralegal) | $115-$150 | 182.2 | $23,770.0 |
| Clay Naughton (Partner) | $450-$475 | 51 | $24,115.0 |
| Christopher R. Jaramillo (Associate) | $350 | 3.5 | $1,225.0 |
| Madison Bode (Associate) | $225 | 0.5 | $112.5 |
| Laura Wisman (Senior Paralegal) | $160-$175 | 103.03 | $17,796.25 |
| Anny Marie Martin (Associate) | $200-$350 | 531.3 | $173,978.75 |
| Eduardo Morales (Associate) | $350 | 924.5 | $323,575.0 |
| Sheila DeLeon (Paralegal) | $160 | 0.7 | $112.0 |
| Total Attorney's Fees: | | | $799,917.00 |

The hours spent on this litigation are reasonable given the following factors:

1. More than 67,000 pages of documents were produced in discovery. *See* **Exhibit 3** (document bates stamped UW012218) *and add* **Exhibit 4** (document bates stamped NSN055607). These

6

documents had to be procured from witnesses, analyzed, bates stamped, and organized in chronological order to prepare the case for trial.

2. Approximately 13 depositions were held, some of which were held on various dates to accommodate counsel, witnesses, and to account for the feeble health of one witness.

3. Plaintiff's expert witness, Mr. Peter Stembridge, produced a total of three expert witness reports – all combined, they totaled hundreds of pages of complex materials. These reports had to be analyzed and scrutinized.

4. Counsel for both parties began their involvement in the case long before a Complaint was filed in the district court, settlement was attempted but not reached prior to litigation.

5. As this case involved the cost of repairing a vessel, invoices from dozens of repair contractors in the southern Florida region – and even some from the Dominican Republic, where the vessel subject to this litigation ran aground – had to be procured, analyzed, and organized.

6. Complex legal issues involving New York law, Florida law, and admiralty law had to be considered.

7. Various discovery disputes ensued throughout the litigation, requiring motions practice. [DE 66] (motion to compel); [DE 54] (motion to compel).

8. Plaintiff issued, and therefore Defendant had to consider, fourteen (14) non-party subpoenas.

9. Complex topics concerning naval architecture, vessel repairs, fiberglass materials, vessel surveying, vessel classification societies, and testimony from expert witnesses had to be considered by both parties.

10. Plaintiff filed a lawsuit seeking to disclaim coverage, or alternatively, to limit coverage. But the clear and plain language of the insurance policy stated that the actual cost of repairs were recoverable. Rather than settle in good-faith, Plaintiff hired an expert witness that never

surveyed the vessel in-person – indeed never attended the vessel in-person – to testify that the vessel could have been repaired for less money.  This led to an immense amount of document procurement and analysis in order for Defendant to prepare the case for trial.

11. "The mere fact that multiple attorneys were assigned to the case or attended depositions does not, on its own, make counsel's claimed hours unreasonable…[a]n award for time spent by two or more attorneys is proper so long as it reflects the distinct contribution of each lawyer to the case." *Rodriguez v. Molina Healthcare, Inc.*, 806 F. App'x 797, 804 (11th Cir. 2020).

**III.    Total attorney's fees sought equal $799,917 and this sum is reasonable.**

"When determining the reasonableness of attorney's fees, the courts begin by multiplying a reasonable rate by the number of hours reasonable expended." *Walker v. Grampa's Real Estate Inc.*, No. 20-cv-61557, 2022 U.S. Dist. LEXIS 115118, at *4 (S.D. Fla. June 29, 2022) (citing *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).  "The result of that calculation is known as the lodestar, [citation omitted], which is "**strongly presumed to be reasonable**"". *Walker v. Grampa's Real Estate Inc.*, No. 20-cv-61557, 2022 U.S. Dist. LEXIS 115118, at *4 (S.D. Fla. June 29, 2022) (emphasis added).

Here, prior district court opinions demonstrate that the rates charged by Defendant's counsel are reasonable rates for the southern Florida market.  This is sufficient for the hourly rate portion of the loadstar analysis because the "court is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper attorney's fees, and may form an independent judgment either with or without the aid of witnesses as to value". *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).  However, as further aid to the Court in its decision-making, an affidavit from the senior partner is included herein as **Exhibit 5**.  The affidavit details the experience of each timekeeper, for the Court's consideration.

Next, the total hours spent on this matter – which began in 2017 and continue as of the date of this motion – are indeed reasonable given the voluminous amount of discovery and the complex issues at stake. This point is detailed in greater length in section II of the argument segment herein.

The evidence before the Court is sufficient to find that fees incurred by Defendant were indeed fair and reasonable in light of the subject matter involved in this litigation. *Walker v. Grampa's Real Estate Inc.*, No. 20-CV-61557, 2022 U.S. Dist. LEXIS 1151118, at *5 (S.D. Fla. June 29, 2022) ("[c]ourts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection").

**IV.    Defendant is entitled to pre-judgment interest.**

"As a general rule, pre-judgment interest should be awarded in admiralty cases". *St. Paul Fire & Marine Ins. Co. v. Lago Canyon, Inc.*, 561 F.3d 1181, 1183 (11th Cir. 2009). In determining which rate of interest to apply, "the district court has discretion in setting the pre-judgment interest rate and can look to a variety of sources in setting the rate". *Trident Int'l v. Imperial Majesty*, No. 08-61277-CIV-WPD/JAG, 2013 U.S. Dist. LEXIS 189207, at *10 (S.D. Fla. Feb. 8, 2013) (citing *Kilpatrick Marine Piling v. Fireman's Fund Ins., Inc.*, 795 F.2d 940, 947-48 n. 11 (11th Cir. 1996)).

**V.    Pre-Judgment Interest can be calculated from the date this action was filed to the date when the Court entered an order declaring Defendant the prevailing party.**

In *Trident Int'l v. Imperial Majesty*, the district court held that pre-judgment interest accrues from the date the action was filed. *Trident Int'l v. Imperial Majesty*, No. 08-61277-CIV-WPD/JAG, 2013 U.S. Dist. LEXIS 189207, at *10 (S.D. Fla. Feb. 8, 2013) ("[t]he court finds that given the equities of this case, pre-judgment interest from the date this action was filed is appropriate").

9

Here, Plaintiff filed its Complaint on December 22, 2020. [DE 1]. And the Court entered an Order declaring Defendant the prevailing party on January 11, 2023. [DE 124]. For convenience and ease of calculation, Defendant requests the Court consider awarding two years' worth of pre-judgment interest. That is, from December 2020 through December 2022.

This measurement of pre-judgment interest is charitable towards Plaintiff. That is, Plaintiff made its last payment under the insurance policy in June 2019. [DE 123], p. 7. And the Court entered an order granting Defendant summary judgment in January 11, 2023. [DE 124]. Therefore, Defendant could in theory request prejudgment interest from June 2019 through January 2023. But case law suggests that courts must balance the equities in determining pre-judgment interest, and the same case law suggests that measuring pre-judgment interest from the date of commencement of the litigation is proper. *Trident Int'l v. Imperial Majesty*, No. 08-61277-CIV-WPD/JAG, 2013 U.S. Dist. LEXIS 189207, at *10 (S.D. Fla. Feb. 8, 2013) ("[t]he court finds that given the equities of this case, pre-judgment interest from the date this action was filed is appropriate"). Therefore, Defendant requests merely two-years' worth of pre-judgment interest.

**VI.   The interest rate used to calculate pre-judgment interest can be derived from 28 U.S.C § 1961(a).**

In *Trident Int'l v. Imperial Majesty*, the district court held that a fair and equitable interest rate for calculating pre-judgment interest could be determined by looking at 28 U.S.C. § 1961(a), which sets forth the interest rate for post-judgment interest awards. *Trident Int'l v. Imperial Majesty*, No. 08-61277-CIV-WPD/JAG, 2013 U.S. Dist. LEXIS 189207, at *10 (S.D. Fla. Feb. 8, 2013) ("[t]he court further determines that the federal post-judgment interest rate is a fair and equitable measurement. Pursuant to 28 U.S.C. § 1961(a), the post-judgment interest rate equals "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System").

The Federal Reserve shows a current interest rate for the 1-year U.S. Treasury of 4.69 %[1]. Defendant spent $9,764,746.01 repairing the Vessel. [DE 123], p. 16. Plaintiff made partial payments under the relevant insurance policy, starting in June 2017 and ending in June 2019, and totaling $3,259,432.20. [DE 123], p. 6-7. As such, Defendant is owed an additional $6,505,313.81 from Plaintiff to recover the total costs of repairing the vessel. Therefore, two-years' worth of pre-judgment interest on $6,505,313.81, calculated with the prevailing rate of 4.69 %, yields a total pre-judgment interest award of **$610,198.42**. The following table serves as a useful summary:

| Year | Judgment Owed | Interest Rate | Pre-Judgment Interest |
|---|---|---|---|
| 2020 – 2021 | $6,505,313.81 | 4.69 % | $305,099.21 |
| 2021 - 2022 | $6,505,313.81 | 4.69 % | $305,099.21 |

**VII. Defendant is further entitled to post-judgment interest at a rate of 4.69%, pursuant to 28 U.S.C. § 1961(a).**

"Post judgment interest shall be allowed on any money judgment in a civil case recovered in a district court". *Ins. Co. of N. Am. V. Lexow*, 937 F.2d 569, 570 (11th Cir. 1991) (citing 28 U.S.C. § 1961(a)). "Pursuant to 28 U.S.C. § 1961(a), the post-judgment interest rate equals "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System". *Trident Int'l v. Imperial Majesty*, No. 08-61277-CIV-WPD/JAG, 2013 U.S. Dist. LEXIS 189207, at *10 (S.D. Fla. Feb. 8, 2013). Therefore, this district court has authority to hold that the applicable interest rate for any post-judgment award should be 4.69%.

Finally, the Court's order should note that interest on post-judgment interest begins to accrue from the date of "entry of the merits judgment". *Deceide Gustave v. Sbe Ent Holdings,*

---

[1] https://www.federalreserve.gov/releases/h15/ (As of Sunday, January 22, 2023).

*LLC*, No. 19-23961-Civ-SCOLA/TORRES, 2022 U.S. Dist. LEXIS 155114, at *14 (S.D. Fla. Aug. 29, 2022) ("[a]lthough the circuits are split when post-judgment interest begins accruing to calculate interest on a [attorney's] fee award, most circuits hold that interest begins accruing upon the entry of the merits judgment"); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S. Ct. 1570, 1576 (1990) ("postjudgment interest properly runs from the date of entry of judgment"). Here, the Court entered summary judgment in favor of Defendant on January 11, 2023. [DE 124].

In sum, the district court has authority to hold Plaintiff liable for post-judgment interest, calculated starting on January 11, 2023 at an annual interest rate of 4.69%.

## **CONCLUSION**

Defendant respectfully requests this Court enter an Order decreeing the following:

1. Plaintiff is liable for attorney's fees pursuant to *Fla. Stat.* § 627.428.
2. After considering the requisite loadstar analysis, the Court finds that the hourly rates charged by counsel for Defendant are reasonable.
3. Furthermore, the Court finds that the total hours expended on this matter are reasonable.
4. Thus, the Court finds that Plaintiff is liable for $799,917.00 in attorney's fees.
5. With respect to pre-judgment interest, the Court finds that Plaintiff is indeed liable for pre-judgment interest.
6. The Court further finds that an interest rate of 4.69% is proper.
7. The Court further finds that two-years' worth of pre-judgment interest is proper under the circumstances.
8. The Court therefore concludes that Plaintiff is liable for $610,198.42 in pre-judgment interest.

9. With respect to post-judgment interest, the Court finds that 28 U.S.C. § 1961(a) controls, and thus post-judgment interest shall be awarded.

10. With respect to the applicable interest rate for post-judgment interest, the Court finds that an interest rate of 4.69% is proper.

Dated: January 23, 2023

Respectfully submitted,

**MOORE & COMPANY, P.A.**
*Counsel for Plaintiff*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: michael@moore-and-co.com
Email: cnaughton@moore-and-co.com

s/Michael T. Moore
Michael T. Moore, Esq.
Florida Bar No. 207845

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2023, I electronically filed the foregoing document with the Clerk of the court using CM/ECF. Copies of this pleading will be automatically served on all counsel of record through the Court's CM/ECF system.

Michael T. Moore

## LOCAL RULE 7.3(b) GOOD FAITH EFFORT CERTIFICATION

Pursuant to Local Rule 7.3(b), Counsel for Defendant attempted to meet & confer with Counsel for Plaintiff via phone on Friday, January 20, 2023. No agreement was reached. Furthermore, efforts to resolve this litigation by way of settlement have been ongoing for nearly two years. Moreover, the Court entered an Order granting summary judgment to Defendant on January 11, 2023. [DE 124]. The Order expressly stated that "Defendant shall file its motion for

13

attorney's fees and/or costs by January 23, 2023". [DE 124], p. 13.  Therefore, Counsel for Defendant could not serve a copy of this motion thirty-days (30) prior to filing it with the Court, as required by Local Rule 7.3(b), given the short turn-around time between entry of the Court's summary judgment for Defendant on January 11, 2023 and the Court's imposed deadline for this motion of January 23, 2023.  Nevertheless, the parties did confer over the phone in an attempt to resolve this attorney's fee claim.

Michael T. Moore