**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

CERTAIN   UNDERWRITERS   AT
LLOYD'S OF LONDON, subscribing to
Policy No. B0901LH1620115000,

      Plaintiff,

vs.

EMPRESS MARINE VENTURES LTD.,

      Defendant.

_____ /

Case No. **0:20-cv-62643-AHS**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**<u>ATTORNEY'S FEES AND PRE/POST JUDGMENT INTEREST</u>**

Pursuant to Local Rule 7.3, Plaintiff Certain Underwriters at Lloyd's of London, subscribing to Policy No. B0901LH1620115000 ("Plaintiff" or "Underwriters"), by and through undersigned counsel, opposes Defendant Empress Marine Ventures Ltd.'s ("Defendant" or "Empress Marine") Motion for Attorney's Fees and Pre/Post Judgment Interest [D.E. 125] ("Motion").  Empress Marine's Motion must be denied for the reasons detailed below.

## I.   INTRODUCTION

This case is about coverage under a marine insurance contract of a motor vessel that grounded outside the navigating limits in the waters of the Dominican Republic.  In ruling on Defendant's Motion, the Court is presented with three issues:

**Complete Bar To An Award.**  An insured cannot recover pre- or post-judgment interest where the insured materially breaches the insurance contract.  Here, Empress Marine materially breached the at-issue Policy by permitting the Vessel to venture outside the Policy's "Navigating" limits where it allegedly sustained grounding-related damages.  Thus, because Empress Marine failed to strictly comply with the Policy's clear and unambiguous "Navigating" limits warranty, the Court must find that Empress Marine materially breached the at-issue Policy and, as a result, Empress Marine relinquished any claim to pre- or post-judgment interest.

**Quantum Of Damages Uncertain.**  A judgment awarding cash damages cannot be properly entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.  Supporting documentation, affidavits or testimony is typically required to prove with reasonable certainty a stable foundation for damages.  Here, Empress Marine failed to submit supporting documentation, detailed affidavits or credible testimony supporting its request for an award of $9,764,746.01.[1]  Thus, because Empress Marine's damages claim is not supported by credible proof, the Court must reject the Defendant's proposed order and hold an evidentiary hearing to determine the quantum of damages, including pre- and post-judgment interest amounts, at a minimum.

**No Right To Attorney's Fees**.  The Eleventh Circuit has held that the availability of attorney's fees is determined under the state substantive law governing the underlying claim.  *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001).  The Eleventh has also held that § 627.428, Fla. Stat., is substantive law for *Erie* purposes. *All Underwriters v. Weisberg*, 222 F.3d 1309 (11th

---

[1]

Cir. 2000). Here, § 627.428 does not apply because this Court has already determined that New York law governs the substantive issues in this case. *See* Def.'s Resp. Opp. MTD [D.E. 16] at 3 ("As a preliminary matter, Defendant Empress Marine does not contest that the insurance policy at issue is governed by New York law."); Order [D.E. 46] at 7 ("The parties do not dispute that New York law is controlling under the Policy. Accordingly, New York law governs substantive issues.") (citation omitted); Policy's Choice of Law & Jurisdiction Clause [D.E. 10-1] at 7. Thus, Empress Marine is barred from seeking attorney's fees under Fla. Stat. § 627.428.

## II. Relevant Factual Background

1.      Defendant owned a 2011 130-foot Sunseeker Predator Motor Yacht known as M/Y "Never Say Never" (the "Vessel").

2.      Defendant obtained a Hull and Machinery Policy from Underwriters (Policy No. B0901LH1620115000), with effective dates of July 31, 2016 to July 31, 2017 (the "Policy"), to cover the Vessel.

3.      The Policy's choice of law clause provides that New York law applies. The Policy does not contain a prevailing party clause.

4.      The Policy's "Navigating" limits warranty provided:

> **Navigating**: Inland and coastal waters of the east and Gulf coast U.S.A. between Eastport, Maine and Brownsville, Texas, including the Bahamas and the Turks and Caicos Islands. Plus waters of the Mediterranean Sea, including adjacent seas, excluding Israel, Lebanon, Libya and Syria.[2]

5.      In or around November 2016, Defendant planned to transport the Vessel from Fort Lauderdale to the Dominican Republic:

> Q: When were you first contacted regarding the motor yacht, Never Say Never?
>
> A: Maybe a month before. Probably in November. I don't know.
>
> Q: Of 2016?
>
> A: The year that I took it, yeah.
>
> Q: Who contacted you?

---

[2] *Compare* Plt.'s Stmt. Mat. Facts [DE 74] ¶ 6 (providing "Navigating" clause) *with* Def.'s Resp. Stmt. Mat. Facts [DE 105] ¶ 6 ("**UNDISPUTED**.").

A: The captain.

Q: Do you remember his name?

A: Robin.

Q: Robin Todd?

A: I believe so.

Q: When Captain Robin called you, Mr. Sackmann, what did he tell you he needed you to do?

A: Deliver the vessel from Fort Lauderdale to the Dominican Republic.

*See* Relief Captain Dusty Sackmann's Depo. Trans. at 11:11–12:3 [D.E. 82-1 at 4].

    6.      On December 28, 2016, Emily Bryant of JLT Specialty Limited sent an email correspondence to Defendant's insurance broker, Javier Mora, in which stated that Underwriters need to issue an endorsement to include Caribbean navigating:



D.E. 106-2 at 1, 3 (confirming date sent on December 28, 2016).

    7.      On December 29, 2016, before any endorsement was accepted and issued by Underwriters, Mora reported the Vessel's grounding claim to Emily Bryant of JLT Specialty Limited:

**From:** Javier Mora [mailto:JMora@southeastinsure.com]
**Sent:** 29 December 2016 13:36
**To:** Bryant, Emily - GBR284429
**Subject:** Fwd: Never Say Never - Grounding 28th December

Hello Emily,

Sadly I have to report a claim. The remarks of the captain of Never Say Never are noted above.

Please let me know what you need from end to collect it as soon as possible.

Thanks,
Javier
305.778.1285

Get Outlook for iOS

From: Robin Todd <robintodd@outlook.com>
Sent: Thursday, December 29, 2016 8:27 AM
Subject: Never Say Never - Grounding 28th December
To: Javier Mora <jmora@southeastinsure.com>
Cc: 'Russell Masterman' <nsnengineer@outlook.com>, 'BLUEWATER MASTER' <captdusty@gmail.com>

D.E. 106-2 at 3.

8.      On the same day, December 29, Emily Bryant sent an internal email below in response to the grounding claim reported by Mora:



D.E. 106-2 at 3.

## III.   RELEVANT PROCEDURAL HISTORY

1.   On December 22, 2020, Plaintiff filed a Compliant asserting one count of breach of an express warranty and one count of declaratory relief. *See generally* Amended Complaint [D.E. 10].

2.   On April 2, 2021, Defendant filed an Answer and Counterclaim [D.E. 14].

3.   On August 23, 2022, Plaintiff and Defendant filed competing motions for summary judgment.  As for Plaintiff's motion for summary judgment [D.E. 75], Plaintiff argued, *inter alia*, that Defendant's material breach of the express "Navigating" limits warranty under the Policy bars coverage as a matter of law.

4.   On January 11, 2023, the Court entered an Omnibus Order [D.E. 124] on the Parties' motions for summary judgment:

> **ORDERED AND ADJUDGED as follows:**
>
> 1. Plaintiff's Amended Motion for Summary Judgment and Memorandum of Law in Support of Summary Judgment (DE [75]) is **DENIED**.
>
> 2. Defendant's Motion for Summary Judgment (DE [76]) is **GRANTED**.
>
> 3. In accordance with Federal Rule of Civil Procedure 58, judgment for Defendant EMPRESS MARINE VENTURES, LTD. will be entered separately.
>
> 4. Defendant is **DIRECTED** to submit a proposed order to be e-mailed to singhal@flsd.uscourts.gov in Word format by **January 13, 2023**.
>
> 5. Defendant shall file its motion for attorneys' fees and/or costs by **January 23, 2023**, such motion must include affidavits of any sum certain due by Plaintiff, and any other supporting documentation necessary to determine Defendant's measure of damages.

*Id*. at 12–13.

5.   On January 13, 2023, Defendant submitted to the Court a proposed order for judgment awarding $9,764,746.01 in damages.  Defendant did not produce any affidavits or credible evidence to support the proposed final judgment.  To date, and rightly so, the Court has not entered an Order awarding damages in this matter.

6.   On January 23, 2023, Defendant filed a Motion for Attorney's Fees and Pre/Post Judgment Interest [D.E. 125] seeking $799,917.00 in attorney's fees and $610,198.42 in pre-judgment interest.[3]

---

[3] As an initial matter, the Court may deny Defendant's Motion [D.E. 125] because it fails to comply with Local Rule 7.3(a)(7)'s requirement that it "be verified." Local Rule 7.3's requirements are not optional, but mandatory, and a party's failure to comply with them is a sufficient basis to deny its fees and costs motion. *See Sriskada v. Harbor Pita, Inc.*, No. 14-20526-CIV, 2015 U.S. Dist. LEXIS 85658, at *3 (S.D. Fla. July 1, 2015) (*citing Norych v. Admiral Ins. Co.*, No. 08-60330-Civ-Altonaga, 2010 U.S. Dist. LEXIS 69793, at *2 (S.D. Fla. Jun. 23, 2010)); *Rivas v. Pollack &*

## IV.   LEGAL STANDARD

### A.  Choice of Law

Under New York, the interpretation of a marine insurance contract is a matter of law to be determined by the Court. *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 388 F. Supp. 3d 304, 324 (S.D.N.Y. 2019) ("unambiguous terms in insurance contracts are to be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."). "[I]t is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Id*. at 323 (*quoting Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000)); *see also Preferred Acci. Ins. Co. v. Grasso*, 186 F.2d 987, 991 (2d Cir. 1951).

Under federal admiralty law, choice-of-law clauses in marine insurance contracts are presumptively valid and enforceable, and evince the parties' intention of the specific law to govern a dispute. *Lauritzen v. Larsen*, 345 U.S. 571, 588, 73 S. Ct. 921, 931 (1953) ("[e]xcept as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply."); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39 (2d Cir. 2004) (upholding choice-of-law clause selecting Swiss law without performing any contacts analysis in a dispute with no apparent connection to Switzerland); *Int'l Chartering Servs. v. Eagle Bulk Shipping Inc.*, 138 F. Supp. 3d 629, 640, (S.D.N.Y. 2015) (the law intended by contracting parties and put in a contract's choice of law clause governs the case); *McMahan v. Toto*, 256 F.3d 1120, 1132 (11th Cir. 2001) (analyzing Florida case law; "the availability of attorney's fees should be determined under the state law which also governs the underlying claim"); *King v. Allstate Ins. Co.*, 906 F.2d 1537, 1540–41, 1991 A.M.C. 204 (11th Cir. 1990) ("it should be remembered that maritime insurance is still in great measure a matter of private contract, and all clauses in such private agreements which do not contravene public policy or statutory provisions will be enforced.") (citation omitted; cleaned up); *Unitas Containers Ltd. v. Oilnet Ltd.*, 848 F. Supp. 2d 1358, 1360 (S.D. Fla. 2012) (finding choice of law clause prescribed English law as the law governing the contracts); *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1972) (holding that federal maritime law makes forum selection clauses presumptively enforceable); *Wilburn Boat*

---

*Rosen, P.A.*, No. 19-cv-61815, 2020 U.S. Dist. LEXIS 45794, at *10 (S.D. Fla. Mar. 17, 2020) (violation of Local Rule 7.3 where "the Motion was not properly verified by counsel when it was served" as the Motion itself "did not contain an attorney verification").

*Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–15, 1955 A.M.C. 467 (1955); *Mentor Ins. Co. v. Brannkasse*, 996 F.2d 506, 513 (2d Cir. 1993) ("A federal court sitting in admiralty must apply federal choice of law rules" and, "[i]n admiralty cases, federal maritime law applies where it exists."); *Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366–67 (11th Cir. 1988); Restatement (Second) of Conflict of Laws, § 187 (2nd 1988).

Here, it is undisputed that New York law governs the substantive issues in this case. *See* Def.'s Resp. Opp. MTD [D.E. 16] at 3 ("As a preliminary matter, Defendant Empress Marine does not contest that the insurance policy at issue is governed by New York law."); Order [D.E. 46] at 7 ("The parties do not dispute that New York law is controlling under the Policy.  Accordingly, New York law governs substantive issues.") (citation omitted); Policy's Choice of Law & Jurisdiction Clause [D.E. 10-1] at 7.  Therefore, in accordance with the terms of the Policy's choice of law clause, for any issue in this case for which there is no entrenched rule of federal admiralty law, New York law must apply. *See Egan Marine Corp. v. Great Am. Ins. Co.*, No. 05 C 5295, 2009 U.S. Dist. LEXIS 72443 (N.D. Ill. July 17, 2009) ("[t]he parties agree that general federal maritime law governs this case [and] [i]n the absence of federal maritime law, New York law governs")[4].

V.   **Argument**

A.  **No Entitlement To Pre- Or Post-Judgment Interest Because Defendant Materially Breached The Policy's "Navigating" Limits Warranty.**

An insured's failure to strictly comply with a navigational limits warranty under a marine insurance contract constitutes a material breach of the policy and precludes an award of pre- or post-judgment interest. *See, e.g.*, *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 32 (2d Cir. 1999) (insured materially breached express warranty thereby forfeiting interests under insurance policy); *Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 267 (2d Cir. 1995) ("insureds cannot unilaterally make changes (*e.g.*, by leaving a message with the company the night before a trip asking them to extend the policy)" as endorsement expanding navigational limits "will effect an increase in premium")[5].

---

[4] *See also* Def.'s Resp. Opp. MTD [D.E. 16] at 6 (relying upon *Egan Marine*).
[5] *See also Geico Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1143–44 (11th Cir. 2019) (no award where insured breached navigation limit warranty and insurer did not waive warranty by

Pre-judgment interest is generally awarded as a matter of right and typically begins to accrue from the date of the breach. *Glob. Drilling Suppliers, Inc. v. Pier Tech, Inc.*, No. 13-cv-1106, 2018 U.S. Dist. LEXIS 108492, at *10 (E.D.N.Y. Jun. 27, 2018); *R.B. Williams Holding Corp. v. Ameron Int'l Corp.*, 97-CV-0679E(Sr), 2001 U.S. Dist. LEXIS 2812, at *56 (W.D.N.Y. Mar. 12, 2001) ("prejudgment interest shall be recovered upon a sum awarded because of a breach of performance of a contract"). Courts typically find "the date of the breach" to be when damages are liquidated in nature and a claim is liquidated when it is subject to mathematical computation. *See Allapattah Services, Inc. v. Exxon Corp.*, 188 F.R.D. 667, 681 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003) (pre-judgment interest begins to accrue from the date of the breach); *St. Louis Condo. Ass'n v. Rockhill Ins. Co.*, No. 18-21365-Civ, 2019 U.S. Dist. LEXIS 39583, at *10-11 (S.D. Fla. Mar. 11, 2019) ("[insurer] could not have breached the agreement in December 2017 because that predates the submission of [insured's] proof of loss form that [insured] submitted in February 2018."); *Am. Empire Surplus Lines Ins. Co. v. B & B Iron Works Corp.*, No. 18-cv-6384, 2022 U.S. Dist. LEXIS 161481, at *6 (E.D.N.Y. Aug. 19, 2022) (*citing Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)). The accrual of pre-judgment interest is not triggered where the insured materially breaches the insurance contract in the first instance. *See, e.g.*, *St. Louis Condo. Ass'n*, 2019 U.S. Dist. LEXIS 39583, at *10-11; *Flagship Marine Servs.*, 190 F.3d at 32; *Shackleford*, 945 F.3d at 1143–44.

Here, there is no dispute that: (1) the Policy's "Navigating" limits warranty is clear and unambiguous; (2) the Policy's "Navigating" limits warranty did not include the waters of the Dominican Republic; and (3) the Vessel's alleged grounding-related damages occurred in the waters of the Dominican Republic. So, because Empress Marine failed to strictly comply with the

---

knowing of risk before loss); *Hilton Oil Transp. v. Jonas*, 75 F.3d 627, 630 (11th Cir. 1996) (explaining that the breach of an express maritime warranty deprives the insured of coverage under a "judicially established and entrenched federal admiralty rule," even if the breach is unrelated to the loss); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366–67 (11th Cir. 1988) (holding material breach results where insured violates navigational limits); *The Home Ins. Co. v. Vernon Holdings*, 1995 A.M.C. 369, 374 (S.D. Fla. 1994) ("[F]ederal admiralty law applies to navigational limits warranties, and it does not matter whether the breach increased the hazard of loss; rather, a breach in itself precludes recovery."); *Robinson v. Home Ins. Co.*, 1934 A.M.C. 1557, 1558–59, 73 F.2d 3, 4 (5th Cir. 1934) (ruling that "if damage or loss occurs when the vessel is at a place other than the one named in the policy the insured has no right to recover on the policy, though that place is quite as safe as the one named in the policy.") (binding per *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*)).

Policy's "Navigating" limits warranty, the Court must find that Empress Marine materially breached the at-issue Policy thereby relinquishing any right to pre- or post-judgment interest. But, even if the Court somehow finds that Empress Marine did not relinquish its entitlement to interest, the Court should find that Empress Marine has not and cannot support its claim to pre- and post-judgment interest accruing on $6,505,313.81, as detailed below.

**B.  Defendant Failed To Submit Detailed Affidavits Or Credible Proof Supporting Its Quantum Of Damages Thereby Barring Entry Of Judgment Inclusive Of Pre- And Post-Judgment Interest.**

The Court's Omnibus Order [D.E. 124] necessarily required Empress Marine to submit affidavits and invoices for any sum certain being pursued via the Final Judgment. Here, however, Empress Marine has failed to comply with the Court's Omnibus Order. More specifically, in its Motion, Empress Marine asserts that it is "owed an additional $6,505,313.81 from Plaintiff to recover the total costs of repairing the vessel," plus a "pre-judgment interest award of $610,198.42." Motion at 2, 11. According to the Motion, the $6,505,313.81 amount is derived from the subtraction of the amount allegedly spent repairing the Vessel ($9,764,746.01)[6] from the payments already made by Plaintiff ($3,259,432.20)[7]. *Id.* But Empress Marine failed to file any detailed affidavits or credible proof supporting its damages claim. Thus, Empress Marine's pursuit of the amount allegedly owed in a Judgment and its Motion must be denied.

Under New York law, a movant may seek general or consequential damages in a breach of contract case. *Holland Loader Co. LLC v. FLSmidth A/S*, 769 F. App'x 40, 42–43 (2d Cir. 2019). General damages are those to compensate for the value of the very performance promised. *Id.* Consequential damages are those to compensate for additional losses that are incurred as a result of the breach. *Id.* In either damages scenario, the movant must establish with reasonable certainty the amount of damages it incurred as a result of the breach. *Id.* A movant fails to make the requisite showing to prove damages where it relies upon speculative, unreliable, irrelevant, and not factually comparable evidence. *Id.* at 43. A judgment awarding cash damages cannot be properly entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical

---

[6] Deposition testimony by Empress Marine's Corporate Representative contradicts Empress Marine's damages claim, which provides that "$1.4 [million] is not related" to the grounding claim and, thus, Empress Marine would "be asking for $8.5 million," "minus $3.3" million already paid, plus interest and fees. *See* Rodrigo Chapur Depo. Trans. at 82–84.

[7] Underwriters "paid roughly $3,459,634.00" in repair costs to Empress Marine. *See* Def.'s Counterclaim [D.E. 14] at ¶ 32.

calculation. *See Am. Empire Surplus Lines Ins. Co. v. B & B Iron Works Corp.*, No. 18-cv-6384, 2022 U.S. Dist. LEXIS 161481, at *6 (E.D.N.Y. Aug. 19, 2022) (*citing Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).  Supporting affidavits or testimony is typically required to prove with reasonable certainty a stable foundation for damages. *Id*. at *12; *see also KT Grp. Ltd. v. NCR Corp.*, 412 F. Supp. 3d 305, 326 (S.D.N.Y. 2019); *Adolph Coors Co. v. Movement Against Racism & The Klan*, 777 F.2d 1538 (11th Cir. 1985).  The Omnibus Order inherently recognizes that Empress Marine had to provide evidentiary support for any sum certain that it seeks in this matter. *See* Omnibus Order [D.E. 124].

Here, Empress Marine seeks damages in the amount of $9,764,746.01, the alleged costs to repair the Vessel, minus $3,259,432.20, the alleged payments made by Underwriters.  But Empress Marine has not and cannot prove with reasonable certainty the foundation for its requested damages.  First, Empress Marine failed to submit documentation and detailed affidavits in support of its requested damages.  The only effort made by Empress Marine to prove up its damages came via its proposed order that was submitted to the Court on January 13, 2023.  That proposed order is not supported by any affidavits or credible proof.  In fact, Empress Marine's Corporate Representative admitted in deposition that "$1.4 [million] is not related" to the grounding claim and, thus, Empress Marine would "be asking for $8.5 million," plus interest and fees. *See* Rodrigo Chapur Depo. Trans. at 82–84.  So, Empress Marine would only be seeking approximately "$8.5 minus $3.3." *Id*. at 84.  Clearly, if Empress Marine' Corpoate Representative testimony could be considered credible, the amount recoverable would be approximately $5.2 million.  As a result, the Court cannot ascertain the basis upon which Defendant determined its alleged damages and it appears that Empress Marine is not being forthright in its presentation to the Court on its alleged damages.

Second, with regard to the amount Empress Marine seeks to recover in this matter, Empress Marine's repair costs must be reduced to reflect the nearly $948,503.00 in non-incident-related costs.  More specifically, Empress Marine attempts to include the following non-incident-related repairs as part of its recoverable damages: (1) main engine repair costs totaling about $845,274.00 by The Diesel Workshop despite Defendant's surveyor and expert witness Roy Shorter's recent testimony that the costs associated with rebuilding the engines were not related to the underlying claim but rather to Empress Marine's failure to properly winterize the component parts of the engine during the repair project, *see* Shorter Depo. Trans. at 204:3–206:10 (**Exhibit A**) (Q: "And

so it's your testimony that if the main engines were damaged, they were damaged as a part of the winterization of the engines that was not done properly; is that right?" A: "Absolutely, right."); (2) generator costs totaling about $73,030 for corrosion damage (resulting from lack of protection/preservation); (3) annual hull and machinery inspection costs totaling about $15,606; (4) hiring of a temporary captain for $10,000; and (5) Beard Marine's costs totaling $4,593 for preserving water makers. All of the aforementioned costs are non-incident-related costs. As such, because these costs are not related to repairing the Vessel for the alleged damages it suffered in the claim-related incidents, the Court should reduce Defendant's repair cost damages by at least $948,503.00.

Third, Empress Marine relies upon the deposition testimony of Israel Navarro to support its alleged repair costs in its proposed order submitted to the Court. But Navarro specifically testified that he had no reliable knowledge of the amount Empress Marine paid for repair costs. Indeed, Navarro testified that he never reviewed any invoices being paid, merely remitted payment on demand without knowledge of the underlying expenses, and had no access to any documents or invoices allegedly paid by Empress Marine. *See* Navarro Depo. Trans. [D.E. 103-1] at 3–7. Thus, because Navarro did not and could not render any competent, reliable testimony on the amount paid for repairs costs to the Vessel, the Court should find that Navarro's testimony amounts to mere speculation and cannot be used to buttress an award of damages in a final judgment.

Accordingly, the Court should find that a Final Judgment and pre- and post-judgment interest cannot be determined until a hearing has been held to fasten the amount of damages, if any, properly recoverable by Empress Marine.

### C. Defendant Is Not Entitled To Attorney's Fees Under Fla. Stat. § 627.428 Because § 627.428 Is Substantive Law And New York Law Governs The Substantive Issues In This Case.

In its Motion, Defendant impermissibly seeks an award of attorney's fees under Fla. Stat. § 627.428. *See generally* Motion [D.E. 125]. But Defendant is foreclosed from seeking an award of attorney's fees under § 627.428 because this Court has already determined that New York law governs the substantive issues in this case and no right otherwise exists.

#### 1. § 627.428 Is Substantive Law And, Thus, Does Not Apply

The Eleventh Circuit has held that "Fla. Stat. § 627.428 is substantive law for *Erie* purposes" and that the Court applies the state law governing the underlying claim. *All Underwriters v. Weisberg*, 222 F.3d 1309, 1311–12 (11th Cir. 2000); *McMahan v. Toto*, 256 F.3d

11

1120, 1132–33 (11th Cir. 2001) ("the availability of attorney's fees should be determined under the state law which also governs the underlying claim") (analyzing Florida case law); *see also Riverside Apartments of Cocoa, LLC v. Landmark Am. Ins. Co.*, 505 F. Supp. 3d 1293, 1316 (M.D. Fla. 2020) ("The Court has already determined that Georgia law governs Plaintiffs' underlying claims, so the Court must also apply Georgia law on the issue of attorney's fees. Thus, Plaintiff's may not recover under Fla. Stat. § 626.9373.")

Here, § 627.428 does not afford Empress Marine an avenue to seek attorney's fees in this case. The Policy's choice of law clause provides that New York law applies. *See* Policy's Choice of Law & Jurisdiction Clause [D.E. 10-1] at 7. Empress Marine does not dispute that New York law governs this case. *See* Def.'s Resp. Opp. MTD [D.E. 16] at 3 ("As a preliminary matter, Defendant Empress Marine does not contest that the insurance policy at issue is governed by New York law."). And this Court has already determined that New York law governs the substantive issues in this case. *See* Order [D.E. 46] at 7 ("The parties do not dispute that New York law is controlling under the Policy. **Accordingly, New York law governs substantive issues**.") (citation omitted; emphasis added). Thus, Empress Marine is barred from seeking attorney's fees under Fla. Stat. § 627.428 because substantive Florida law does not apply in this case. *See McMahan*, 256 F.3d at 1132; *Riverside Apartments*, 505 F. Supp. 3d at 1316.

Defendant's reliance on *Mears Transp. Grp., Inc. v. Zurich Am. Ins. Co.*, 660 F. Supp. 2d 1297 (M.D. Fla. 2009) is misguided. The *Mears* case offers no analysis whatsoever of why Fla. Stat. § 627.428 applied despite the case being governed by New York law. Indeed, in that case, the insurer subsequently moved for reconsideration of that order, which ultimately led to a settlement between the parties and the insurer filing an unopposed motion to vacate the prior order granting the insured's summary judgment motion. Defendant merely offers *Mears* for the quoted excerpt which is unsupported and without any analysis. Thus, the Court should reject *Mears* which is not binding and is inherently unreliable.

## 2. New York And Federal Admiralty Law Do Not Permit Attorney's Fees

The Second Circuit has determined that federal maritime law precludes the award of attorney's fees in marine insurance contract disputes. *Am. Nat. Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d Cir. 1995). "[T]he general rule is that the award of [attorney's] fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 308–09 (2d Cir. 1987). *Ingersoll* established a

federal admiralty rule "which now must be followed instead of state law" in the Second Circuit. *Kenealy*, 72 F.3d at 270. Accordingly, attorney's fees are unavailable where there has been no claim of bad faith. *See, e.g., Great Lakes Reinsurance (UK) PLC v. Fortelni*, 951 F. Supp. 2d 385, 389-91 (E.D.N.Y. 2013); *Federal Ins. Co. v. PGG Realty, LLC*, 529 F. Supp. 2d 460, 464 (S.D.N.Y. 2008).

Here, Empress Marine has no avenue to seek attorney's fees. The Policy is devoid of a prevailing party fee provision. *See Galveston Cty. Navigation Dist. No. 1 v. Hopson Towing Co.*, 92 F.3d 353, 356 (5th Cir. 1996) ("Generally, absent statute or enforceable contract, litigants must pay their own attorneys' fees" in admiralty cases pursuant to the "American Rule"). Binding federal admiralty law also precludes attorney's fees absent a showing of bad faith. And Empress Marine has not alleged and cannot establish the requisite showing of bad faith to be entitled to attorney's fees. Thus, because Empress Marine has no basis to seek attorney's fees in this case, the Court should find that Empress Marine is not entitled to attorney's fees. Accordingly, the Court should deny Empress Marine's Motion.

### D. Alternatively, Defendant's Requested Amount Of Attorney's Fees Must Be Reduced As Unsupported, Unreasonable, And Excessive.[8]

In the event the Court determines that Empress Marine is entitled to an award of fees, the Court must reduce any applicable fee award in this matter significantly because Empress Marine's billing runs afoul of what is considered recoverable under Federal law. "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Id*. at 1303 (citations omitted). In calculating what hours were reasonably expended on litigation, the Court should exclude excessive, unnecessary, and redundant hours, and it should also exclude any time spent litigating discrete and unsuccessful claims. *Id*. at 1301–02 (citation omitted). The Court must also exclude pre-suit attorney's fees and time entries that are block billed which escape the ability to assess what amount of time was spent on the tasks included in the billing entry. *See Rubenstein v. Fla. Bar*, No. 14-cv-20786-Bloom/Valle, 2015 U.S. Dist. LEXIS 41911, at *10 (S.D. Fla. Mar. 31, 2015) (petitioner's "poor billing judgment stems from its use of 'block billing,' which is the practice of including multiple distinct tasks within the same time entry," causing "it is impossible for the [Court] 'to ascertain how much time was spent on each task.'") (citations

---

[8] Attached hereto as **Exhibit B** is a copy of Plaintiff's objections to each specific time entry of Defendant's invoices [D.E. 125-1].

omitted); *Stavrakis v. Underwriters at Lloyd's London*, 2018 U.S. Dist. LEXIS 168819, 27 Fla. L. Weekly Fed. D101 (M.D. Fla. 2018) ("attorneys' fees for pre-suit legal work are not recoverable under § 627.428 and/or § 626.9373 unless the pre-suit work was necessitated by an insurer's unreasonable conduct.").

Here, the requested amount of $799,917.00 in attorney's fees by Defendant is beyond excessive, unreasonable, and unjustified. *See generally* Motion [D.E. 125].  The invoices and bills submitted by Defendant's counsel clearly reveal numerous repeated deficiencies in their failure to maintain specific, contemporaneous entries, as well as their inclusion of bills not compensable. Thus, Plaintiff contends that Defendant is not entitled to any attorney's fees in this matter.

### 1.  Defendant's Documentation Fails to Support an Award

It is well-settled that a party seeking attorney's fees is required to submit contemporaneous time and billing records specifying, for each attorney, the date, the hours expended, and the precise nature of the work performed. *See N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983) ("any attorney . . . who applies for court-ordered compensation . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done"); *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) ("*Carey* establishes *a strict rule* from which attorneys may *deviate only in the rarest of cases*.") (emphasis added); *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985) ("Inadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary.").  A reduction may be had where the bills are vague, lacking specificity, or excessive under the circumstances. *See Browne v. Costales*, 579 So. 2d 161 (Fla. 3d DCA 1991); *Fla. Bar v. Richardson*, 574 So. 2d 60, 63 (Fla. 1990); *Brevard Cty. v. Canaveral Props.*, 696 So. 2d 1244, 1245 (Fla. 5th DCA 1997) (fees "bloated because of excessive time spent, or unnecessary services rendered, or duplicate tasks performed by multiple attorneys does not meet [the] criterion of reasonableness"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998) (abhorring block billing and providing that "a district court may discount requested attorney hours if the attorney fails to keep meticulous, contemporaneous records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks.").

Here, the records submitted in support of attorney's fees fail to reflect the precision and specificity required for such an award.  Defendant's invoices and bills identify about 1,147

separate entries dating from February 13, 2017 to December 30, 2022. *Id*.  Many of those invoices clearly fail to specify the precise task performed or are impermissible block billing entries.  For example, over a quarter of those entries fail to detail the precise task performed, opting instead for the catchall "etc." designation. *See, e.g.*, Invoices [D.E. 125-1] pp. 1, 4, 5, 8, 11, 104, 165, 290, 325. *See also Rubenstein*, 2015 U.S. Dist. LEXIS 41911, at *10 (using "block billing" is a "poor billing judgment" making it impossible for the Court and the parties to ascertain how much time was spent on each task).  Thus, the Court should find that the bills and invoices submitted are insufficient to support an award of attorney's fees.  Accordingly, reductions for these non-compensable tasks should be made in any award, as delineated in Plaintiff's reduction spreadsheet.

## 2. Defendant's Award Should Be Limited To The Fees That Defendant Incurred While Prosecuting This Lawsuit

An insured can only be compensated a reasonable sum as fees or compensation for "prosecuting" the lawsuit for which recovery is awarded. *See* § 627.428(1), Fla. Stat. (2022); *see also Stavrakis*, 2018 U.S. Dist. LEXIS 168819 ("attorneys' fees for pre-suit legal work are not recoverable under § 627.428 and/or § 626.9373 unless the pre-suit work was necessitated by an insurer's unreasonable conduct.").  As such, an insured can only recover fees for work performed in prosecuting the lawsuit. *See Rowland v. Scottsdale Ins. Co.*, No. 8:11-cv-2774-T-33TBM, 2012 U.S. Dist. LEXIS 34818 (M.D. Fla. Mar. 15, 2012) (finding that attorney's fees incurred for pre-suit legal work should not be included in the calculus for determining the amount of attorney's fees owed to plaintiff because said work did not involve the prosecution of plaintiff's lawsuit); *Kearney v. Auto-Owners Ins. Co.*, No. 8:06-cv-00595-T-24-TGW, 2010 U.S. Dist. LEXIS 91415, at *31 (M.D. Fla. Aug. 4, 2010) (declining to award attorney's fees for work done before the complaint was drafted and filed as plaintiff's "request for attorney's fees for pre-suit legal work stretches Florida Statute § 627.428 too far from its actual language. The statute provides for awarding reasonable fees only for an attorney 'prosecuting the suit in which the recovery is had.'"); *Banta Props. v. Arch Specialty Ins. Co.*, No. 10-61485-CIV, 2012 U.S. Dist. LEXIS 191676, at *14 (S.D. Fla. Sep. 17, 2012).  In addition to pre-suit work, time expended in association with a bad faith cause of action would not be compensable in this suit. *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830 (Fla. 1993).

Here, Defendant's recovery of attorney's fees, if any, should be strictly limited to the fees that Defendant has incurred in "prosecuting" its claim.  To that end, Defendant is not entitled to

any attorney's fees for any pre-suit activity undertaken, as such activity did not involve the litigation or prosecution of Defendant's claim. Here, the lawsuit did not commence until December 22, 2020. That said, Defendant's claim for fees for work that occurred before December 22, 2020 is not compensable. As such, a reduction of $316,478.85 is therefore required.

Furthermore, any award of attorney's fees is commensurate with the necessary actions that Defendant's counsel has undertaken to defend and prosecute Defendant's claim. Fees associated with "bad faith" litigation, such as researching and drafting claim for bad faith, are not associated with the prosecution of the suit and, as such, not compensable. *See Sunshine State Ins. Co. v. Davide*, 117 So. 3d 1142 (Fla. 3d DCA 2013); *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830 (Fla. 1993). Accordingly, reductions for these non-compensable tasks have been and should be removed in any award, as delineated in Plaintiff's reduction spreadsheet.

### 3. Defendant's Award Should Be Reduced For Block Billing, Duplicative Billing, Excessive Billing, Unnecessary Research, Non-Legal Work And Inter-Office Meetings Between Attorneys

A number of tasks from Defendant's Motion [D.E. 125] are noncompensable for a variety of reasons.

It is "poor billing judgment" to use "'block billing,' which is the practice of including multiple distinct tasks within the same time entry." *Rubenstein*, 2015 U.S. Dist. LEXIS 41911, at *10 (citation omitted). The use of block billing makes it impossible for the Court and the parties "to verify the need or relatedness of those projects before [the Court] can approve payment for the time incurred." *Id.*; *see also Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998); *Stavrakis*, 27 Fla. L. Weekly Fed. D101, 2018 U.S. Dist. LEXIS 168819, at *9–10 ("the Eleventh Circuit, in an unpublished opinion, impliedly approved the use by district courts of across-the-board reductions in block billed hours to offset the ill effects of block billing"). Here, reduction of any award is necessary because Defendant's invoices reflect the use of block billing. It is impossible for Plaintiff's Counsel to ascertain how much time was spent on certain tasks or what tasks were actually performed. Thus, a reduction for block billing is warranted under the circumstances.

When an attorney performed non-attorney work, "[the] dollar value is not enhanced just because a lawyer does it." *Johnson v. Ga. High. Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (abrogated on distinct grounds). Additionally, fees are appropriately reduced for " . . . duplicated efforts, excessive meetings between attorneys, billing for administrative tasks, senior counsel's

billing for legal research that could have been assigned to an associate or paralegal, and billing at full rates for non-legal tasks like travel and clerical functions." *St. Fleur v. City of Ft. Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005). "[I]f the same task is performed by more than one lawyer, multiple compensation should be denied." *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983) ("For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."); *see also Reynolds v. Coomey*, 567 F.2d 1166, 1167 (1st Cir. 1978); *Brake v. Murphy*, 736 So. 2d 745, 748 (Fla. 3d DCA 1999); *Oravec v. Sunny Isles Luxury Ventures L.C.*, No. 04-22780-CIV, 2010 U.S. Dist. LEXIS 32390, at *49 (S.D. Fla. Mar. 30, 2010) (reducing attorney fees for "duplicative work by multiple attorneys and block billing," such as multiple attorneys attending a deposition or working on one project).

Defendant's attorney's fee invoices reflect multiple conferences between its attorneys in person and via telephone.  Conversations between attorneys do not constitute compensable legal work. *Fla. Birth-Related Neurological Injury Comp. Ass'n v. Carreras*, 633 So. 2d 1103 (Fla. 3d DCA 1994); *N. Dade Church of God, Inc. v. JM Statewide, Inc.*, 851 So. 2d 194 (Fla. 3d DCA 2003).  Accordingly, any fee entries for attorney conferences should be removed. *St. Fleur v. City of Ft. Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005).

Moreover, Defendant's alleged attorney's fees include bills for secretarial/clerical tasks, such as "[a]rrange meeting," "scheduling meeting" and "schedule deposition."  Simply because an attorney performs these tasks does not mean that the tasks should be compensated at an attorney's rate of pay.  None of these types of tasks constitute legal work that is compensable.  As such, these types of tasks must be stricken from the bills, as delineated in Plaintiff's reduction spreadsheet. *See N. Dade Church of God, Inc. v. JM Statewide, Inc.,* 851 So. 2d 194 (Fla. 3d DCA 2003); *Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986) (work done by librarians, clerical personnel and other support staff is considered within the overhead component of a lawyer's fees; disallowing hours and fees for "file review," "tag exhibits," among other clerical tasks); *For Play Ltd. v. Bow to Stern Maint., Inc.*, No. 05-22002-CIV, 2006 U.S. Dist. LEXIS 81108 (S.D. Fla. Nov. 3, 2006); *Hansen v. Deercreek Plaza, LLC*, 420 F. Supp. 2d 1346 (S.D. Fla. 2006).

Lastly, Defendant's fee invoices indicate that there are multiple instances of more than one attorney attending an event/deposition or duplicated efforts to perform a task.  As such, reductions to the bills should be made for duplicate billing. *St. Fleur*, 149 F. App'x at 853; *Oravec*, No. 04-

22780-CIV, 2010 U.S. Dist. LEXIS 32390, at *49; *Franklin v. Stettin*, 579 So. 2d 245, 247 (Fla. 3d DCA 1991), *rev. denied*, 591 So. 2d 180 (Fla. 1991).

### 4.  Travel Time And Costs Are Non-Compensable

Travel is a non-legal task. *St. Fleur v. City of Ft. Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005).  Courts have held that travel is non-compensable. *Citizens Prop. Ins. Corp. v. Pulloquinga*, 183 So. 3d 1134, 1138 (Fla. 3d DCA 2015); *In re: Amendments to Fla. Rules of Civil Proc. - Unif . Guidelines for Tax'n of Costs*, 47 Fla. L. Weekly S277 (Fla. Nov. 10, 2022); *In re Amendments to Unif . Guidelines for Tax'n of Costs*, 915 So. 2d 612 (Fla. 2005); *Hahamovitch v. Hahamovitch*, 133 So. 3d 1062, 1063 (Fla. 4th DCA 2014) (reversing award of fees for travel time and travel expenses).  As such, Defendant's attorney's fees must be adjusted to remove travel time, parking costs and the like, as delineated in Plaintiff's reduction spreadsheet.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reject Defendant's proposed Order as it fails to comply with the Court's Omnibus Order and Defendant has not provided any affidavits or testimony to support a sum certain for any amount it seeks to recover in a Final Judgment in this matter.  Plaintff also respectfully requests that this Court deny Defendant's Motion for Attorney's Fees and Pre/Post-Judgment Interest [D.E. 125] as such an award is not proper in this case.  Moreover, Defendant seeks a host of attorney's fees and costs that are unsupported, unreasonable, and excessive thereby precluding Defendant's ability to recover those fees.  Thus, in the event a fee award is granted to Defendant, the Court should reduce such an award to reflect the fees that are not compensable.  A decision to the contrary has the potential to open the door for various fees sought for reimbursement that are completely outside of what is recognized as compensable under the law.  Therefore, Plaintiff requests that this Court deny Defendant's Motion, and for any other relief this Court deems just and proper.

## REQUEST FOR HEARING

Pursuant to S.D. Fla. Local Rule 7.1(b)(2), Plaintiff hereby respectfully requests a hearing to be held on the relief sought herein given the ramifications if the Court enters a final judgment awarding Defendant attorney's fees and/or pre/post judgment interest.  Plaintiff believes a 45-minute hearing will be helpful to the Court in assessing the merits of the issues raised and is reasonable under the circumstances.

Dated: February 6, 2023.                       Respectfully submitted,

                                               **BROWN SIMS**
                                               4000 Ponce De Leon Blvd, Suite 630
                                               Coral Gables, Florida 33146
                                               Tel:    (305) 274-5507
                                               Fax:    (305) 274-5517
                                               *Counsel for Plaintiff Underwriters*

                                    By*: /s/ Marlin K. Green*
                                               MARLIN K. GREEN
                                               Florida Bar No. 419532
                                               Email: mgreen@brownsims.com
                                               CODY L. FRANK
                                               Florida Bar No. 124100
                                               Email: cfrank@brownsims.com

<u>**SERVICE LIST**</u>

**MOORE & COMPANY, P.A.**
*Attorneys for Empress Marine*
255 Aragon Avenue, 3rd Floor
Coral Gables, FL 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Michael T. Moore, Esq.
Florida Bar No. 207845
Email: michael@moore-and-co.com
Clay Naughton, Esq.
Florida Bar No. 029302
Email: cnaughton@moore-and-co.com